UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Civil Action No.  SA-05-CV-099-XR |
| | ) | |
| LINDA EVANS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

On this date, the Court considered Plaintiff's motion for summary judgment (Docket No. 30) and Defendants' sealed motion for partial summary judgment (Docket No. 32). For the reasons discussed below, Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART and Defendant's sealed motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART.  The Court will set aside Linda Evans' property transfers to South Texas Royalty Co., Ltd. ("South Texas") because they were fraudulent transfers under section 24.006(a) of the Texas Uniform Fraudulent Transfers Act ("TUFTA").  The Court expresses no opinion on the Government's section 24.005(a)(1) TUFTA claim.  The Court finds that the TUFTA's four-year extinguishment provision does not apply to Plaintiff.  The Court expresses no opinion on Plaintiff's nominee or alter ego theory of liability.  The Court will enter judgment against Linda Evans for her joint income tax liability in the amount of **$519,124.23** for 1989, 1990, and 1993.  Post-judgment interest will accrue at a rate of 4.93% pursuant to 28 U.S.C. § 1961.  The Court will not impose fiduciary liability on Linda Evans for the Estate's income tax liability for 1989, 1990, and 1991 because the 2001 agreed Tax Court judgment was res judicata of that claim.

All remaining deadlines contained in the Court's Scheduling Order are VACATED. The Court will enter judgment on a separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.  Plaintiff is ORDERED to file a proposed judgment within two weeks from the date that this Order is signed.  If Defendants reach a settlement with the IRS before Judgment is entered, they might be able to avoid a Court ordered sale of the transferred assets held by South Texas.

### I. Factual & Procedural Background

The United States has filed a motion for summary judgment against all Defendants.  The Government seeks to (1) reduce several years of tax assessments against the Estate of Robert C. Evans, Jr., deceased, and Linda Evans to judgment; (2) hold Linda Evans personally liable for the separate income tax liabilities of the Estate; (3) set aside allegedly fraudulent transfers of property interests from Linda Evans to a limited partnership; and (4) obtain an order of sale on the property interests and an order allowing seizure of personal property to satisfy the delinquent tax liabilities.

Robert C. Evans, Jr. is the late husband of Linda Evans.  He died on October 3, 1993, and Linda Evans was appointed as the independent executrix of his estate ("Estate"). Linda Evans filed an inventory with the probate court of Dimmit County, Texas, listing the total value of the Estate at $593,723. The terms of Robert Evans' will generally provided that Linda Evans would receive half of Mr. Evans' property upon his death, and the remainder would be held in trust for the benefit of his three children.

Prior to his death, the IRS had sent Mr. Evans a letter on June 23, 1992 indicating that his income tax returns for 1986 and 1987 had been selected for examination.  After his death, the IRS examination was expanded to include the Evanses' returns for 1989 through 1992, resulting in a letter dated April 20, 1994 requesting the Evanses' 1992 and 1993 income tax returns and

summarizing the IRS' findings for the years 1986 through 1991.  On July 31, 1995, the IRS sent

Robert Evans, deceased, and Linda Evans a letter indicating that the IRS proposed assessing taxes

against Linda Evans and the Estate for the 1989, 1990, and 1991, in the amounts of $56,318,

$47,498, and $22,243, respectively.  Penalties of $23,106, $17,524, and $10,010 were also proposed

and listed for each year.

Around July of 1995, Linda Evans' CPA and her attorney suggested that she create a limited

partnership with a corporate general partner and transfer all her and her late husband's assets to that

limited partnership. On August 2, 1995, Linda Evans, as president of the named general partner,

Laredo Royalty Corp. ("Laredo Royalty"), signed the Articles of Limited Partnership and Certificate

of Limited Partnership of South Texas Royalty Co., Ltd. ("South Texas"). Paragraph 6 of the Articles

listed the partners of South Texas, along with their corresponding capital contributions and initial

ownership percentages:

―――――――――――――

| General Partner: | Laredo Royalty Corp. | 1% |
| Limited Partner: | Linda Evans | 69% |
| Limited Partner: | Kimberly Evans Dockery | 10% |
| Limited Partner: | Jason Mellinger | 10% |
| Limited Partner: | Kimberly Evans Dockery, Custodian of Robert Kendall Evans | 10% |

―――――――――――――

Laredo Royalty was formed on July 19, 1995 (according to its tax returns) for the purpose

of serving as the general partner of South Texas.  Laredo Royalty is paid a "management fee" from

South Texas and does not perform work for other entities.  On September 23, 1995, via six deeds,

Linda Evans transferred all interest owned individually, and as independent executrix of the Estate,

in her homestead residing on the 53.15 acres in Dimmit County, Texas, and in all mineral interests owned within and outside of Texas, to South Texas.  Per the Inventory, these items totaled $360,850. In addition to the transfers of these properties, sometime in 1995, Linda Evans transferred life insurance proceeds totaling $740,000 to South Texas.[1]

On South Texas' Form 1065 for the 1995 tax year, the Schedule K-1 listed the partners with their corresponding capital contributions and ownership interests at the end of the year:

|  | Cap. Contr. | Capital Year End | Ownership % |
|---|---|---|---|
| Linda P. Evans | $737,161 | $706,653 | 70.80% |
| Kimberly Evans Dockery | $97,832 | $103,223 | 9.40% |
| Jason Mellinger | $97,832 | $103,223 | 9.40% |
| Kimberly Evans Dockery, Custodian for Robert Kendal Evans | $97,832 | $103,223 | 9.40% |
| Laredo Royalty Corp. | $10,550 | $11,124 | 1.00% |

On South Texas' Form 1065 for the 1996 tax year, the Schedule K-1 listed the partners with their corresponding capital contributions and revised ownership interests at the end of the year:

|  | Cap. Contr. | Capital Year End | Ownership % |
|---|---|---|---|
| Kimberly Evans Dockery | $0 | $338,852 | 33.0% |
| Jason Mellinger | $0 | $338,852 | 33.0% |
| Kimberly Evans Dockery, | $0 | $338,852 | 33.0% |

---

[1]In her motion for summary judgment, Linda Evans alleged that she received $400,000 in settlement proceeds, $200,000 characterized as non-taxable recovery of benefits due under the life insurance policy issued to Robert C. Evans, Jr., deceased, and $200,000 characterized as damages for personal injury and sickness.  Linda Evans alleged that $400,000 was deposited into the South Texas bank account, not $740,000.

Custodian for Robert Kendal Evans

| | | | |
|---|---|---|---|
| Laredo Royalty Corp. | $0 | $18,265 | 1.00% |

No capital or ownership percentage was reported for Linda Evans on the 1996 return, indicating that she disposed of her ownership interest in South Texas sometime during 1996. Linda Evans' gift or disposition of her partnership interest to the children was not reported to the IRS on any of her income tax returns, and she did not file any related gift tax return. The respective ownership percentages in South Texas have not changed since 1996.

Linda Evans receives royalty checks on a monthly basis, in amounts ranging between $5,000 to $8,000, for the mineral interests owned by South Texas. She deposits these checks in South Texas' bank account. Linda Evans still lives in the home owned by South Texas. Linda Evans current and sole source of income is derived from her position as manager for Laredo Royalty. Linda Evans pays the bills, maintenance, upkeep, and electricity on the residence out of the Laredo Royalty bank account.

The Government seeks to reduce tax, penalty, and interest assessments totaling $824,051.53 to judgment. The Government claims that Linda Evans was the sole independent executrix and one of the beneficiaries of her deceased husband's estate and that she is personally liable as a fiduciary for the Estate's income tax liability under 31 U.S.C. § 3713. The Government claims that transfers of property by Linda Evans, individually, and on behalf of the Estate to South Texas after the death of her husband constituted fraudulent transfers that should be set aside by the Court. The Government seeks to set aside these allegedly fraudulent transfers by relying on TUFTA. The Government claims that TUFTA's four-year extinguishment provision does not apply to the federal government. The Government claims that it can rely on TUFTA to set aside the allegedly fraudulent

transfers and that it is bound by the ten year statute of limitations founds in 26 U.S.C. § 6502(a)(1), not the four-year extinguishment provision found in TUFTA. Alternatively, the Government seeks to set aside the transfers by alleging that the limited partnership is holding the assets as a nominee or alter ego of Linda Evans.

On January 12, 1998, the United States Tax Court determined that Linda Evans and her husband, jointly (they filed joint 1040 income tax returns), owed the following income tax deficiencies, additions, and penalties for 1989, 1990, and 1991:

**1998 Tax Court Judgment**

Joint Liability

| Year | Deficiency | Addition | Penalty |
|------|------------|----------|---------|
| 1989 | $63,105 | $15,776 | $9,203 |
| 1990 | $52,402 | $13,101 | $5,650 |
| 1991 | $26,264 | $6,566 | $5,156 |

The Tax Court held that Linda Evans was not entitled to innocent spouse relief. *Evans v. C.I.R.*, T.C. Memo 1998-11 (Jan. 12, 1998). The Fifth Circuit affirmed in part, reversed in part and remanded, holding that Linda Evans was entitled to innocent spouse relief and that her personal liability on the debt should be reduced by the Tax Court pursuant to the innocent spouse provisions of 26 U.S.C. § 6015. *Evans v. C.I.R.*, No. 98-60128, 83 A.F.T.R.2d 99-2998 (5th Cir. May 28, 1999). On remand, the Tax Court entered an agreed judgment on January 29, 2001. The 2001 agreed Tax Court judgment apportioned the original assessment into two categories: "Joint Liability" and "Estate Only Liability." Linda Evans was granted innocent spouse relief under 26 U.S.C. § 6015,

so her personal liability (i.e. joint liability) was reduced.  The sum of the "Joint Liability" and the "Estate Only Liability" below equals the total amount of Joint Liability that was originally assessed by the Tax Court on January 12, 1998.

### 2001 Agreed Tax Court Judgment After Fifth Circuit Remand

_____

Joint Liability

| Year | Deficiency | Addition | Penalty |
|------|-----------|----------|---------|
| 1989 | $48,831 | $11,990 | $4,325 |
| 1990 | $26,474 | $6,682 | -- |
| 1991 | $533 | $131 | -- |

_____

Estate Only Liability

| Year | Deficiency | Addition | Penalty |
|------|-----------|----------|---------|
| 1989 | $14,274 | $3,786 | $4,878 |
| 1990 | $25,928 | $6,419 | $6,560[2] |
| 1991 | $25,731 | $6,435 | $5,156 |

_____

As of August 30, 2006, the Government claims that the total amount of delinquent income taxes owed by Linda Evans jointly for 1989, 1990, 1991, and 1993 totaled $524,866.70.  The Government provided Certificates of Assessments and Payment (Form 4340s) for each of the above years regarding Linda Evans' joint income tax liability. The Certificates indicate that Linda Evans was given credit for the innocent spouse relief she received as a result of the Tax Court agreed judgment. The $524,866.60 also includes joint income tax liability for the 1993 tax year in the amount of $87,492 (deficiency), $55,979.74 (interest), and $12,071.25 (penalty), which was timely

_____

[2]This amount should be $5,650, as discussed _infra._

assessed on February 12, 1999.  Linda Evans' joint income tax liability for tax year 1993 was not litigated in the 1998 Tax Court case.  Defendants dispute the calculation of this amount.

As of August 30, 2006, the Government claims that the total amount of delinquent income taxes owed by the Estate for 1989, 1990, and 1991 totaled $299,184.83. The Government provided Certificates of Assessments and Payment (Form 4340s) for each of the above years regarding the Estate's income tax liability.  This amount is based on the "Estate Only Liability" amounts contained in the Tax Court agreed judgment.  Defendants do not dispute the calculation of this amount because the Government is not attempting to hold Defendants liable for it.

Finally, the Government claims that Linda Evans is subject to fiduciary liability under 31 U.S.C. § 3713 for delinquent income taxes owed by the Estate for 1989, 1990, and 1991. The Government claims that Linda Evans, as independent executrix of the Estate, distributed or transferred the assets of the Estate before paying the Estate's delinquent income tax liability for 1989, 1990, and 1991.   The Government claims that it is entitled to judgment against Linda Evans under section 3713(a)(1)(B) for the amount of income tax owed by the Estate at the time the assets were transferred, which in this case was allegedly $246,030.92, plus statutory interest from September 23, 1995.   The Government claims that Linda Evans distributed the assets of the estate, totaling approximately $593,723 without satisfying the Government's income tax claims against the Estate.  The Government claims that Linda Evans had notice of the pending IRS examinations in September of 1995, the time of the alleged fraudulent transfers. No Certificates of Assessments and Payment (Form 4340s) are provided for this amount.  The amount is apparently based on the original 1998 Tax Court assessment, which was later apportioned by the 2001 agreed Tax Court judgment. The deficiencies in tax, penalty and addition to tax contained on the first page of the 2001 agreed

Tax Court judgment (original 1998 Tax Court assessment imposing joint liability) are identical to the "tax assessment" contained in the Government's section 3713 calculation. Defendants argue that the Government's section 3713 fiduciary liability claim is barred by res judicata, and they dispute the calculation of this amount.

In their motion for partial summary judgment, Defendants argue that the Government's fiduciary liability claim under section 3713 is barred by res judicata. Defendants argue that the 2001 Agreed Tax Court Judgment granted Linda Evans innocent spouse relief and apportioned the Evanses' joint income tax liability for the years 1989, 1990, and 1991 (page one of the 2001 agreed Tax Court judgment) into "Joint Liability" (page two) and "Estate Only Liability" (page three). *See* DOJ-37. Therefore, Defendants argue that it is wrong to hold Linda Evans directly liable for $524,866.70, which is the "Joint Liability" owed by Linda Evans and the Estate after the 2001 Tax Court agreed judgment apportioned liability, and to hold Linda Evans liable as a fiduciary for $246,030.92, which is the "Joint Liability" owed by Linda Evans and the Estate as of September 23, 1995, before the 2001 Tax Court agreed judgment apportioned income tax liability for those years. Defendants argue that the Government could have and should have asserted its fiduciary liability claim against Linda Evans for the Estate's 1989, 1990, and 1991 delinquent income taxes in the 1998 Tax Court case, which addressed the Evanses' joint income tax liability for 1989, 1990, and 1991. Linda Evans claims that "the Government is attempting to artfully relitigate the personal liability of Linda P. Evans by asserting fiduciary liability under 31 U.S.C. § 3713."

Regarding the alleged fraudulent transfers, Defendants argue that the Government is subject to the four-year extinguishment provision contained in the TUFTA statute, which they categorize as a statute of repose, or alternatively that they have a valid defense to the TUFTA claim because

Linda Evans transferred the property to the limited partnership in a good faith exchange for reasonably equivalent value (her and her children received a limited partnership interest). Defendants do not address the Government's nominee or alter ego theory in the motion for partial summary judgment, and they neglect to mention that Linda Evans gratuitously transferred her 70% limited partnership interest to her children (through South Texas) in 1996 for no consideration.

The Government argues that Defendants' res judicata argument fails because the "same claim or cause of action" was not involved in both actions. The matters decided by the Tax Court were the joint income tax liabilities of Robert Evans and Linda Evans for 1989, 1990, and 1991. The Government claims that these were "completely separate claims from the United States' current claim under 31 U.S.C. § 3713 regarding Linda P. Evan's actions as a fiduciary in 1995."

On April of 2004, May of 2004, and March of 2005, the IRS filed notices of federal tax lien against South Texas, Laredo Royalty, Linda Evans, Robert C. Evans, Jr. (deceased), Kimberly Dockery, Robert Kendall Evans, and Jason Mellinger in the real property records of Dimmit County, Texas. Kimberly Dockery, Robert Kendall Evans, and Jason Mellinger are the children of Linda Evans who currently hold limited partnership interests in South Texas. The IRS filed this suit on February 4, 2005.

## II. Legal Analysis

### A.   Summary judgment standard of review.

Both parties have filed cross-motions for summary judgment. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999).

A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "[T]he court must review the record 'taken as a whole.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that

is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999); *accord Little*, 37 F.3d at 1075 (" [w]e do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.") (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14 (1992) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2nd Cir.1989)).  The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence."  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

**B.     The transfer of the Evanses' assets to South Texas for no consideration constituted a fraudulent transfer under section 24.006(a) of TUFTA.  The Court expresses no opinion on the Government's section 24.005(a)(1) claim.  Additionally, the Court finds that the Government is not subject to TUFTA's four-year extinguishment provision.**

      **1.     The Court will set aside the asset transfers to South Texas pursuant to Tex. Bus. & Com. Code § 24.006(a).**

Pursuant to Texas Business & Commerce Code § 24.006(a), a transfer is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

The Court finds that the Government was a creditor of Linda Evans for delinquent income tax liability for 1989, 1990, 1991, and 1993 no later than April 15, 1994.  The Government is a creditor of a taxpayer as of the date the obligation to pay income taxes accrues. *Stretch-O-Rama, Inc. v. Hart*, 79 F. Supp.2d 660, 667 n.14 (E.D. Tex. 1999); *Short v. United States*, 395 F. Supp. 1151, 1154 (E.D. Tex.1975); *United States v. Green*, 201 F.3d 251, 257 (3d Cir. 2000)("The United States is considered a creditor 'from the date when the obligation to pay income taxes accrues,' essentially on April 15 of the year following the tax year in question").  Linda Evans transferred her and her late husband's assets to South Texas during September of 2005.  It is immaterial that the income tax liability for 1989, 1990, and 1991 was not assessed until March 24, 1998, which was after the transfers to South Texas were made.[3]  The Fifth Circuit has rejected the position that the Government is not a creditor until it assesses tax, penalty, and interest for a particular tax year.  *See Zahra Spiritual Trust v. U.S.*, 910 F.2d 240, 248 (5th Cir. 1990).  This conclusion is reinforced by TUFTA's broad definition of the term "claim."  *See* Tex. Bus. & Comm. Code § 24.002(3) ("'Claim' means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

---

[3]The income tax liability for 1993 was assessed on February 12, 1999.

equitable, secured, or unsecured"); *see Zahra Spiritual Trust*, 910 F.2d at 248 ("[T]he Act 'protects the holders of unliquidated unmatured contingent claims'").

The Fifth Circuit has held that a defendant debtor's knowledge of a pending IRS investigation that might result in a tax assessment is sufficient to confer "existing creditor" status on the IRS for purposes of Texas fraudulent transfer law. *Zahra Spiritual Trust*, 910 F.2d at 248. The Court finds that Linda Evans had knowledge of the pending IRS investigation into 1989, 1990, 1991, and 1993 prior to her transfer of the assets to South Texas in September of 1995. The IRS sent a letter to Mr. Evans on June 23, 1992 indicating that his income tax returns for 1986 and 1987 had been selected for examination. After Mr. Evans' death, the IRS investigated the Evanses' returns for 1989 through 1992, resulting in a letter dated April 20, 1994 requesting the Evanses' 1992 and 1993 income tax returns and summarizing the IRS' findings for the years 1986 through 1991. On July 31, 1995, the IRS sent Robert Evans, deceased, and Linda Evans a letter indicating that the IRS proposed assessing taxes against Linda Evans and the Estate for the 1989, 1990, and 1991, in the amounts of $56,318, $47,498, and $22,243, respectively. Penalties of $23,106, $17,524, and $10,010 were also proposed and listed for each year. These IRS investigations occurred prior to Linda Evans' transfer of the assets to South Texas. The Court concludes that Linda Evans knew of the outstanding tax liabilities when she made the asset transfers to South Texas during September of 1995.

The Court finds that Linda Evans did not receive reasonably equivalent value because she gratuitously transferred her 70% limited partnership interest to her children in 1996 for no consideration. Defendants argue that the initial 1995 transfer of the property to the limited partnership constituted a reasonably equivalent exchange because Linda Evans and her children each received a limited partnership interest. Alternatively, Defendants argued at a hearing before the

Court on February 15, 2007 that Linda Evans received an intangible non-economic benefit from the transfer—the love, affection, and support of her children.  The Court disagrees.  Even assuming that Linda Evans received a 70% limited partnership interest in 1995, this argument ignores that fact that Linda Evans later disposed of her 70% limited partnership interest in 1996 for no consideration. Additionally, Defendants' counsel stated at the hearing that the 1996 gratuitous transfer occurred to correct a mistake because Linda Evans never intended to retain any partnership interest when she created South Texas and made the initial 1995 transfer.

The Fifth Circuit has concluded that intangible non-economic benefits do not constitute reasonably equivalent value for purposes of Texas fraudulent transfer law.  *See Zahra Spiritual Trust*, 910 F.2d at 248 ("The relevant inquiry under section 24.03(a) [the prior Texas Fraudulent Transfers Act] is whether the debtor received monetary, not spiritual, consideration . . . The purpose of the Texas fraudulent transfer statute is the protection of creditors against voluntary conveyances by their debtors. It is based upon the maxim that a man must be just before he is generous"); *see In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("Intangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value" for purposes of TUFTA); *see* Tex. Bus. & Comm. Code § 24.004(d) ("'Reasonably equivalent value' includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction").  Intangible, non-economic benefits are typically not transferred in an arm's length transaction between strangers.  Defendants stress that Linda Evans' three children received limited partnership interests after the asset transfer, which constitute reasonably equivalent value.  This argument misses the mark.  Section 24.006(a) requires this Court to examine whether Linda Evans (transferor) received reasonably equivalent value when she

transferred her and her husband's assets to South Texas (transferee).  The limited partnership interests held by Linda Evans' children (third-party insiders) in South Texas (transferee) are completely irrelevant to whether Linda Evans (transferor) received reasonably equivalent value for the transfer.  Although Linda Evans arguably received reasonably equivalent value when she received a 70% limited partnership interest after the initial 1995 transfer, she gratuitously transferred this 70% limited partnership interest to her children for no consideration in 1996.  So in the end, Linda Evans transferred all her and her husband's assets to South Texas, and she received nothing in return for it.  Although this Court cannot fault Linda Evans for desiring to provide for her children's future support, she was obliged under Texas and federal law to pay income taxes before transferring her and her late husband's assets to her children through South Texas.  The Court concludes that Linda Evans transferred the legal title of her and her husband's assets to her children for no consideration.

The Court finds that Linda Evans' transfer of her and her husband's assets to South Texas rendered her insolvent as a result of the transfer or obligation.  The Government has established that Linda Evans sole source of income is derived from her role as manager of Laredo Royalty.  Legal title to all of the transferred assets is held by South Texas.  Defendants have failed to demonstrate that Linda Evans has enough personal assets to satisfy her debt obligations.  The asset transfer to South Texas resulted in Linda Evans being unable to pay her debt obligations as they became due.

In an action for relief against a transfer under TUFTA, a creditor, subject to the limitations of section 24.009, may obtain avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.  TEX. BUS. & COMM. CODE § 24.008(a)(1).  If a creditor obtains a judgment on a claim against the debtor, the creditor, if the Court so orders, may levy execution on the asset

transferred or its proceeds. *Id.* at § 24.008(b).  By its terms, the section 24.009(a) defense only applies to section 24.005(a)(1) TUFTA claims, not section 24.006(a) claims.[4]  Consequently, the Court will set aside Linda Evans' transfer of assets to South Texas pursuant to section 24.006(a) of TUFTA.

### 2.    The Court expresses no opinion on the Government's section 24.005(a)(1) TUFTA claim.

Pursuant to Texas Business & Commerce Code § 24.005(a)(1), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor.  A transfer made with a fraudulent intent to evade future liabilities is void as to subsequent creditors. *United States v. Chapman*, 756 F.2d 1237, 1241 (5th Cir. 1985). In order for a conveyance to be held fraudulent as to one who became a creditor subsequent to the transaction, it is necessary that the intent exist at the time of the conveyance to shield the property from debts thereafter to be incurred. *Id.*

Pursuant to section 24.005(b), "actual intent to hinder, delay or defraud" may be inferred from a non-exclusive list of eleven factors.  Fraudulent intent under TUFTA can be decided by the Court as a matter of law.  *In re Hinsley*, 201 F.3d at 643; *Connell v. Connell*, 889 S.W.2d 534, 542 (Tex. App.–San Antonio 1994, writ denied). One of TUFTA's badges of fraud is whether the transferor received consideration reasonably equivalent in value to the asset transferred.  *See* TEX.

---

[4]Section 24.009(a) states that a transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

Bus. & Com. Code § 24.005(b)(8).  Intangible, non-economic benefits do not constitute reasonably equivalent value.  *Hinsley*, 201 F.3d at 643.

This Court has already found that Linda Evans' transfer of assets to South Texas in September of 1995 is voidable pursuant to section 24.006(a) of TUFTA.  Consequently, an analysis of the Government's section 24.005(a)(1) claim is unnecessary.  The Court notes that while fraudulent intent under section 24.005(a)(1) may be inferred by the Court as a matter of law, the burden on the party seeking to void the transfer is high.  *See Connell*, 889 S.W.2d at 542 (summary judgment on section 24.005(a)(1) TUFTA claim is inappropriate unless the evidence "indisputably shows" fraudulent intent).  Defendants argue that a fact issue exists regarding fraudulent intent.

### 3.    TUFTA's four-year extinguishment provision does not apply to the federal government.

Texas Business & Commerce Code § 24.010(a)(2), entitled "Extinguishment of Cause of Action," states that "a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: under Section . . . 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred."

Defendants argue that the four-year extinguishment provision in TUFTA is a statute of repose, and the Government argues that the extinguishment provision is a statute of limitations.  The United States Supreme Court has held that the United States is not bound by state statute of limitations.  *United States v. Summerlin*, 310 U.S. 414 (1940).  The Fifth Circuit has held that the Government is not subject to the statute of limitations contained in a Florida fraudulent conveyance statute; the Government is only subject to the federal statute of limitations.  *United States v. Fernon*, 640 F.2d 609, 612 (5th Cir. 1981).  The Ninth Circuit has held that the Government is not subject

to the claim extinguishment provisions in the California Uniform Fraudulent Transfers Act ("CUFTA").  *Bresson v. C.I.R.*, 213 F.3d 1173, 1179 (9th Cir. 2000).  Other bankruptcy courts and district courts in the Fifth Circuit have accepted the reasoning of *Bresson* and held that the federal government is not subject to TUFTA's four-year extinguishment provision. *United States v. Bantau,* 907 F. Supp. 988, 991 (N.D. Tex. 1995); *United States v. Gaona*, No. SA-04-CA-00151-RF, 2004 WL 3186398, *3 (W.D. Tex. Dec. 22, 2004); *In re Porras*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004).

Defendants cite to *United States v. McLendon* for the argument that TUFTA's four-year claim extinguishment provision is a statute of repose and the Government is subject to it.  84 A.F.T.R.2d 99-5714*, No. 3:97-CV-0613-G, 1999 WL 1494998, *4 (N.D. Tex. July 28, 1999). *McLendon* reached this issue in dicta, and the case was decided before *Bresson*.  This Court does not find the reasoning of *McLendon* persuasive.  The overwhelming weight of authority indicates that the Government is not subject to the TUFTA's four-year claim extinguishment provision.  The district court cases from the Ninth Circuit cited by Defendants have been overruled by *Bresson*.  This Court concludes that the Government's section 24.006(a) TUFTA claim is subject to the ten-year statute of limitations provided by 26 U.S.C. § 6502(a)(1).  That statute provides that "where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun–within 10 years after the assessment of the tax."  The IRS assessed tax, penalties, and interest for 1989, 1990, and 1991 on March 24, 1998.  The IRS assessed tax, penalties, and interest for 1993 on February 12, 1999.  The IRS filed this suit on February 4, 2005, which was approximately seven years after the 1998 assessment.  The Court finds that TUFTA's

four-year extinguishment provision does not apply to the federal government and that the Government's section 24.006(a) TUFTA claim was timely filed.

**C.    The Court expresses no opinion on the Government's nominee or alter ego theory of liability.**

The Court finds it unnecessary to evaluate the Government's nominee or alter ego theory of liability because the Court is relying on section 24.006(a) of TUFTA to set aside the transfer of assets to South Texas.  *See In re Grothues*, 245 B.R. 828, 832 (W.D. Tex. 1999), *rev. on other grounds*, 226 F.3d 334 (5th Cir. 2000); *See In re Richards*, 231 B.R. 571, 579 (E.D. Penn. 1999); *see United States v. Scherping*, 187 F.3d 796, 801 (8th Cir.1999) ("The government may collect the tax debts of a taxpayer from assets of the taxpayer's nominee, instrumentality, or 'alter ego'"), *cert. denied*, 528 U.S. 1162 (2000).

**D.    Linda Evans owes the Government joint income tax liability for 1989, 1990, and 1993 in the amount of $519,124.23.**

IRS assessments enjoy an initial presumption of correctness and the burden of proof  is on the taxpayer to show that the IRS's determination is erroneous.  *Griffin v. Comm'r*, 285 F.2d 91, 95 (5th Cir. 1960).  It is incumbent upon Defendants to provide "competent and relevant" evidence that each one of the assessments made by the IRS for the various tax years were erroneous.  *Id.* at 95-96.

The Government alleges that Linda Evans owes joint income tax liability for 1989, 1990, 1991, and 1993 in the amount of $524,866.70.  The Court's review of the IRS' form 4340s indicate that Linda Evans was given credit for the innocent spouse relief she received from the 2001 agreed Tax Court judgment.  Defendants argue that they should not be liable for the $5,742.47 interest charge on the zero balance for 1991.  The Government argues that this amount constitutes interest accrued before the assessed amounts were paid off or credited.   The IRS' form 4340 for the

Evanses' joint income tax liability for 1991, dated June 8, 2004, indicates a zero balance.  The Court

finds that the Government's $5,742.47 interest charge for tax year 1991 is completely unsupported

by the evidence and should be disallowed.  *See* DOJ-920.  Consequently, Linda Evans does not owe

joint income tax liability for 1991.  The Court agrees with the Government's argument that the

section 6662(a) penalty on the third page of the 2001 agreed Tax Court judgment contains a

transposition error and should be $5,650, not $6,560.[5]  Consequently, the IRS' form 4340 for the

Evanses' joint income tax liability tax year 1990, dated June 8, 2004, is correct.  *See* DOJ-906.

Defendants did not object to the Government's calculation of the Evanses' joint income tax liability

for 1993, which was assessed on February 12, 1999. *See* DOJ-921. The Court finds that Linda Evans

owes the Government $524,866.70 - $5,742.47 = **$519,124.23** in joint income tax liability for 1989,

1990, and 1993.

**E.    The Court will not impose fiduciary liability on Linda Evans for the Estate's income
        tax liability for 1989, 1990, and 1991 because the 2001 agreed Tax Court judgment was
        res judicata of that claim.**

The Court finds that the Government's section 3713 fiduciary liability claim is barred by res

judicata based on the 2001 agreed Tax Court judgment.  Claim preclusion, or "pure" res judicata,

is the "venerable legal canon" that insures the finality of judgments and thereby conserves judicial

resources and protects litigants from multiple lawsuits. *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th

Cir.1993). Claim preclusion is appropriate only if four conditions are satisfied. First, the parties in

---

[5]Before apportionment of the Evanses' joint income tax liability for 1989, 1990, and 1991,
the Tax Court stated on the first page of its judgment that the section 6662(a) penalty for 1990 was
$5,650.  After applying the innocent spouse provisions of I.R.C. § 6015, the Court apportioned the
entire section 6662(a) penalty for 1990 to "Estate Only Liability," but the Tax Court accidentally
stated that the amount was $6,560 instead of $5,650.  The Court believes that it has the authority to
correct this clerical mistake contained in the 2001 agreed Tax Court judgment.

a later action must be identical to (or at least be in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits. *Eubanks v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th Cir.1992). If these conditions are satisfied, claim preclusion prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or in opposition to the cause of action asserted in the prior action. *In re Howe*, 913 F.2d 1138, 1144 (5th Cir.1990) (emphasis added).  In this case, the Government argues that the fourth element has not been satisfied because the "same claim or cause of action" is not involved in both suits.

In *U.S. v. Shanbaum*, the Fifth Circuit stated the following:

> The United States brought this suit to reduce to judgment income tax and transferee liability assessments that it had made against Bernice H. Shanbaum and her husband, Theodore B. Shanbaum, and to foreclose upon tax liens that it had asserted against the Shanbaums' real estate. The assessments were made after the government and the Shanbaums entered into agreed decisions in the United States Tax Court . . . . [T]he district court concluded that Mrs. Shanbaum should be relieved of her tax liability because she was an "innocent spouse" within the meaning of 26 U.S.C. § 6013(e) . . . . The government appeals, contending that the doctrine of res judicata required the district court to give the Tax Court decisions preclusive effect and thus barred Mrs. Shanbaum from raising the innocent spouse defense in the court below.

10 F.3d 305, 308 (5th Cir. 1994).

> An agreed judgment is entitled to full res judicata effect. *United States v. Int'l Building Co.*, 345 U.S. 502, 505-06 (1953); *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1144 (5th Cir.1981); *Kaspar Wire Works*, 575 F.2d at 538-39. Finally, the causes of action that formed the basis of this suit and the proceedings in the Tax Court are identical. We have stated that "one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." *Finley v. United States*, 612 F.2d 166, 170 (5th Cir.1980). Thus, "if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948).

Since all of the conditions of claim preclusion have been satisfied, that doctrine applies in this suit. Having once had the opportunity to assert defenses to her tax liability, res judicata barred Mrs. Shanbaum from asserting in the district court the innocent spouse defense to her tax liability. *Id.*; *Smaczniak*, 998 F.2d at 242.

*Id*. at 313-14.

If res judicata barred the taxpayer from asserting innocent spouse relief in *Shanbaum* because the taxpayer did not raise that defense with the Tax Court, then res judicata should bar the Government from asserting its fiduciary liability claim in this Court because the Government did not raise that liability argument with the Tax Court. In the 1998 Tax Court case, the Government sued Linda Evans in her individual and representative capacity as executrix of her husband's Estate. The Court finds that the first, second, and third elements of res judicata are established and undisputed. Furthermore, the Government acknowledges that it could have asserted its section 3713 fiduciary liability claim against Linda Evans for the Estate's unpaid income tax liability for 1989, 1990, and 1991 in Tax Court. *See* 26 U.S.C. § 6901(a)(1)(B); *see Allen v. Comm'r*, T.C. Memo 1999-385, 1999 WL 1063545, *10 (U.S. Tax Ct. Nov. 24, 1999) ("We [Tax Court] now consider whether David (as the executor and fiduciary of Sloan's estate) is personally liable (pursuant to 31 U.S.C. section 3713(b)) for Federal estate and income taxes, and additions to tax, owed by the Estate").

The Fifth Circuit has held that one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation. *Finley v. United States*, 612 F.2d 166, 170 (5th Cir.1980). The 1998 Tax Court case involved the Government's claim of joint *income tax liability* against Linda Evans *in her individual and representative capacity* for 1989, 1990, and 1991. The Government's section 3713 claim is a claim of joint *income tax liability* against Linda Evans in her *representative*

*capacity* for those same tax years.  The 2001 agreed Tax Court judgment was a valid agreed judgment, and it was res judicata of Linda Evans' income tax liability—both in her individual and representative capacity—for 1989, 1990, and 1991.  The 2001 agreed Tax Court judgment apportioned the Evanses' joint income tax liability for 1989, 1990, and 1991 into "Joint Liability" (personally owed by Linda Evans) and "Estate Only Liability" (owed only by the Estate). If the Court allowed the Government to recover on its section 3713 claim, then the Tax Court's income tax liability apportionment for 1989, 1990, and 1991 would be rendered meaningless.

The Government argues that although 26 U.S.C. § 6901(a)(1)(B) provides the IRS with a summary administrative procedure for pursuing its section 3713 fiduciary liability claim in Tax Court, such procedure is not an exclusive remedy because the Government may directly bring a section 3713 fiduciary liability claim in district court without a section 6901 assessment followed by Tax Court review. Even assuming that the IRS may elect between these two remedies in pursuing a section 3713 claim against a fiduciary, which this Court does not decide,[6] the Government's election of remedies defense does not resolve the res judicata problem.  *See, e.g., United States v. Geniviva*, 16 F.3d 522, 525 (3d Cir. 1994) (holding that a section 6901 assessment is not a prerequisite to a direct action in district court against a transferee under 26 U.S.C. § 6324(a)(2)).  In *Geniviva*, res judicata was not an issue because there was no prior Tax Court decision, and the Government's transferee liability claim involved unpaid gift taxes, not unpaid income taxes.  In this case, both the Tax Court case and this district court case involve a claim for unpaid income taxes for 1989, 1990, and 1991.  Linda Evans was sued in her representative capacity in the Tax Court case

---

[6]The Court notes that the *Geniviva* decision cited by the Government for its election of remedies defense involved transferee liability, not fiduciary liability.

regarding the Estate's income tax liability for those years, and Linda Evans is being sued in this Court in her representative or fiduciary capacity for that same income tax liability for those same years. The Court concludes that the Government's section 3713 fiduciary liability claim against Linda Evans is barred by res judicata. Linda Evans, in her representative or fiduciary capacity as executrix of the Estate, should be protected from multiple lawsuits regarding the Estate's income tax liability for identical tax years.[7]

Aside from the fact that the claim is barred by res judicata, the Court also believes that the Government's section 3713 fiduciary liability calculation is incorrect. The section 3713 calculation relies on the original joint income tax assessment for 1989, 1990, and 1991 contained in the January 12, 1998 Tax Court decision before it was reversed and remanded by the Fifth Circuit for income tax liability apportionment under the innocent spouse provisions of section 6015:

———————————————

This is the Section 3713 interest updates:

| Year | Date funds withdrawn | Assessment | Interest/Penalty (through 9/23/1995) |
|------|----------------------|------------|--------------------------------------|
| 1989 | 1/23/1995 | $63,105.00 | $38,508.84/$15,776.25 |
| 1990 | 1/23/1995 | $52,402.00 | $23,220.36/$13,100.50 |
| 1991 | 1/23/1995 | $26,264.00 | $    8,138/$ 5,515.44 |

Total:  $246,030.92

———————————————

[7]The Court notes that res judicata might not be an issue if the Government had pursued a section 3713 fiduciary liability claim against Linda Evans for delinquent *estate taxes* for 1989, 1990, and 1991. Unlike Linda Evans' income tax liability in her fiduciary capacity for those years, her estate tax liability in her fiduciary capacity was not litigated in the 1998 Tax Court case.

The assessment amounts on the section 3713 claim are identical to the assessment amounts imposed by the Tax Court before reduction and apportionment by the 2001 agreed Tax Court judgment. The Court believes that allowing recovery on the Government's section 3713 fiduciary liability claim would result in a partial double recovery for the Government. Ultimately, however, the calculation of the section 3713 fiduciary liability is irrelevant because the claim is barred by res judicata.

### III. Conclusion

Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART (Docket No. 30) and Defendant's sealed motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART (Docket No. 32). The Court will set aside Linda Evans' property transfers to South Texas Royalty Co., Ltd. ("South Texas") because they were fraudulent transfers under section 24.006(a) of the Texas Uniform Fraudulent Transfers Act ("TUFTA"). The Court expresses no opinion on the Government's section 24.005(a)(1) TUFTA claim. The Court finds that the TUFTA's four-year extinguishment provision does not apply to Plaintiff. The Court expresses no opinion on Plaintiff's nominee or alter ego theory of liability. The Court will enter judgment against Linda Evans for her joint income tax liability in the amount of **$519,124.23** for 1989, 1990, and 1993. Post-judgment interest will accrue at a rate of 4.93% pursuant to 28 U.S.C. § 1961. The Court will not impose fiduciary liability on Linda Evans for the Estate's income tax liability for 1989, 1990, and 1991 because the 2001 agreed Tax Court judgment was res judicata of that claim.

All remaining deadlines contained in the Court's Scheduling Order are VACATED. The Court will enter judgment on a separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure. Plaintiff is ORDERED to file a proposed judgment within two weeks from the date that

this Order is signed.  If Defendants reach a settlement with the IRS before Judgment is entered, they might be able to avoid a Court ordered sale of the transferred assets held by South Texas.

It is so ORDERED.

SIGNED this 22nd day of March, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE